Parker, C. J.,
delivered the opinion of the Court. In this case, the verdict, which had been returned for the plaintiffs, having been set aside, and a new trial * granted, on the ground that the act of stopping to man a prize, which act occasioned a delay of two or three hours, was a deviation, the plaintiffs have attempted, on a second trial, to prevail upon the same facts, on the ground that the deviation proved was a barratrous act on the part of the master; and so that the assured, not being owners of the vessel, but merely shippers of goods, are, by the express terms of the policy, entitled to recover. The verdict was, however, returned for the defendant, in conformity with the direction of the judge, who charged the jury, that the facts proved did not show any wilful breach of duty towards the owners, on the part of the master, nor any fraud or criminality in him.
The question submitted to us, by the motion for a new trial, which has been fully and ably argued, is, whether the charge to the jury was right in point of law; or, rather, whether the facts proved in the case did not require a charge, that an act of barratry had been committed by the master in the transaction, which has already been declared by.the Court to be a deviation. The question is of importance, and not altogether free from difficulty ; but as we have unanimously come to a result satisfactory to our own minds, we do not think it proper to keep the parties in suspense upon a question highly interesting to them, for the sake of giving a more perfect statement of the reasons which have brought us to this result, than the present opportunity will enable us to do.
Our opinion is, that the act alleged to be barratry was a simple deviation, and not barratry. That every deviation is not barratry, was solemnly decided in the last case, in which the subject has *13 been discussed in the Court of King’s Bench in England — the case of Earle & Al. vs. Rowcroft, in which Lord Ellenborough examined all the preceding decisions, and came to the conclusion, which is warranted by a scrutiny of all the authorities, that it is essential to the offence of barratry, that the act complained of should be either criminal or fraudulent on the part of the master.
* Some of the cases cited by the counsel for the plaintiffs, considered separately, and without relation to other cases settled with at least equal solemnity, certainly give color to the doctrine that every act of the master, which is contrary to his duty to his owners, and which may be prejudicial to them, is barratry, although accompanied with no crime or fraud, and even although done with an honest intention to promote their interest. But we apprehend, if these cases are carefully inspected, they will be found not to militate with the rule laid down in Earle & Al. vs. Rowcroft.
The strongest case cited for the plaintiffs is that of Moss vs. Byrom. There the master had taken a letter of marque, for the sole purpose of enticing seamen to ship for his voyage, and without any intention to use it for any other purpose; he not having taken certain documents, which were necessary to authorize him to act under his commission. But on his voyage, with the assent of his crew, he stopped and plundered an American vessel, having previously determined to cruise for prizes. Afterwards he cruised for some days out of the course of his voyage, and captured a vessel, which he sent into port, whither he followed her, and libelled her as prize, as well for the owners as himself. Aware that he had done wrong, he directed that his cruising should not be mentioned in the log-book. In an action against the underwriters, for a loss oy barratry of the master, they were held liable; and it was considered that the stopping to plunder the American vessel was in itself barratry, because contrary to his duty to his owners, who were bound by charter-party to proceed with the ship to Liverpool as speedily as possible. It is not stated in the case that the act was held to be either criminal or fraudulent on the part of the master; but the decision seems to be placed upon the ground that he had acted contrary to his duty to his owners, and to their prejudice. The defence made by the underwriters was, that the conduct of the master did not amount to barratry, because it did not appear that he intended to prejudice the interest of his * owners. But the court determined that it was immaterial what his intentions were, provided he had violated his duty.
If this case stood alone, it would go far to support the plaintiffs' claim in the present action; for, although it is difficult to exculpate *14 the master from fraud, or perhaps crime, — that is, a breach of law, — in cruising without having the documents necessary to authorize him to cruise, yet it does not appear that stress was laid by the court upon that point. But upon comparing this with cases afterwards decided, and especially with that of Phyn vs. The Royal Exchange Assurance Company, (7) which appears in the very next volume of the Term Reports, the inference can hardly be avoided, that the circumstances of the first case were considered to afford an imputation of crime or fraud against the master.
In this latter case, goods were insured from London to Jamaica, and the instructions were, to proceed immediately to Jamaica. The ship was carried by currents out of her reckoning to a certain point, from whence her direct course to Jamaica was to the south-west, instead of which the master bore up to the north-west about thirty miles, where he brought the ship to anchor. There an embargo was laid; and afterwards, news having arrived of war between Spain and Great Britain, the ship and cargo were seized and condemned as prize. In a suit against the underwriters, one count was for a loss by barratry. It was held to be a deviation, and not barratry ; and Lord Kenyon held that it could not be barratry, without a fraudulent purpose of the master at the time. The jury found, “ that the departure was a deviation, owing to ignorance or something else, but that it was not fraudulent; ” and they returned a verdict for the defendants. Upon the motion for a new trial, the court were clearly of opinion that there must be fraud to constitute barratry. And the learned Justice Lawrence said he knew of no case in which it is said that the act of the captain is barratry, merely because it was against the * interest of the owners; it must be done with a criminal intent; and that the jury, having negatived fraud, had negatived criminality; and so, that it was not a barratrous deviation. Nothing can be more explicit than this doctrine, as laid down by this able judge; and if we do not find it overruled by later decisions, it must be taken to be the settled law of England, that fraud or criminality is essential to barratry.
If the prior case of Moss vs. Byrom had been considered as establishing a principle short of this, certainly some notice would have been taken of that decision. No comment having been made upon it, the inference seems to be irresistible, that fraud was considered as the basis of the decision; notwithstanding, by the reported opinion of the court, it would seem that a breach of duty alone was the ground of the determination. And when we find that the facts in *15 that case show that the master acted unlawfully in cruising without authority, and fraudulently in suppressing the evidence of his transactions in the log-book, there ought not to be thought any discrepancy between the two cases.
The cases cited, which were decided before those which have been commented upon, affirm no other principle than that which has been deduced from these two principal cases. That of Vallejo & Al. vs. Wheeler was a case of illicit trade by the master. The doctrine established by it is well expressed in the marginal note. It is, that barratry is every species of fraud or knavery in the master or mariners of a ship, by which the owners or freighters are injured ; and a deviation, if such, — that is, if fraudulent or knavish, — is barratry.
The other case, of Ross vs. Hunter, is founded entirely upon the fraud of the master, in dropping his anchor at the mouth of the River Mississippi, and going up the river for fraudulent purposes of his own, instead of proceeding immediately to New Orleans, which was the termination of the voyage insured.
No new question seems to have arisen upon this subject in England until the case of Earle vs. Rowcroft; and the doctrine we have adopted is most fully and explicitly * recognized in that case by Lord Ellenborough. The only point which seemed to be unsettled before that case, was, whether an act of the master, although criminal, was barratry, unless he intended by it to injure or defraud his owners. It seems extraordinary that such a doubt should have existed ; and yet we find it contended at so late a period, that an illicit trading with the enemy was not barratry; because the master had in view the benefit of his owners, rather than his own. To settle this point only, was thought to require an elaborate argument of the lord chief justice; but he is careful to prevent any inference being drawn against the principle, before so well settled, that without fraud or crime there can be no barratry; and he closes his argument with a caution not to infer from it that simple deviations can be turned into barratry, to the prejudice of underwriters; for he says there is no case in which barratry can exist without fraud or crime.
We think, after this view of the various decisions in England, there can be no longer a doubt of the state of the law there on this subject; and there is no reason why the same doctrine should not be admitted here. We have no decisions which militate with it; and there is ho reason why barratry, which is in itself criminal and odious, should be imputed to conduct here which would not have that character in England..
There may be violations of duty by a master, which may subject *16 him to actions by his owners, and to suitable damages, without cnarging him with barratry; and it is for barratry only, according to its technical definition and meaning, that underwriters have stipulated to answer. Inferior misconduct is an affair between the owners and the master, for which the underwriters upon a policy do not undertake to indemnify; and there is no reason that they should, since they seldom, if ever, have a voice in the appointment of the master.
Considering it, then, ac well-settled law, that a fraudulent purpose or criminal act is essential to barratry, * we are to inquire whether, from the facts existing in this case, either can be fairly imputed to the master of the Volant, in her voyage from France to the United States.
It has been before decided, in this action, that increasing the armament of the ship, and taking a commission as a letter of marque, furnished no cause of complaint to any one. This alone, even if done without the assent of the owners, would not have been barratry. But it appears that for this the master had the advice and approbation of the agents of the owners and shippers, and of the person who acted with him as supercargo. It is found, by the verdict, that he did not cruise, or even chase; the last of which acis would have been justifiable as regarded his owners, if there had been no restriction upon his use of the commission; and even the underwriters could not complain, if they also, in the policy, had assented to his taking the commission.
But it was understood that his commission and his armament were for defence only; and contrary to this understanding, as it is supposed, he captured a vessel, which he had been endeavoring to avoid ; and in making this capture, he put about, and was delayed, not by sailing out of his course, but in manning his prize, two or three hours. Was this a fraudulent act? He certainly did not intend to capture the vessel for himself alone; for she was libelled for the owners. And although this alone would not excuse him, yet it may well be considered as evidence of innocent.intentions.— Was it a gross malversation in him, as in one of the cases cited ? It appears that what he did was by advice of the supercargo, who was on board, of one of the shippers of the goods, and of all the crew, Ought it not rather to be considered as a mistake of his duty under these circumstances ? And may he not have innocently neen mistaken, when he had a commission, by the consent of all concerned, with no other restriction upon it than an understanding that he was to act only on the defensive ? And might not even a discreet man * have supposed that to have taken a vessel which was thrown into his power, was no infringe *17 ment of the understanding, that he was to use his commission de fensively only?
If these are fair inferences from his conduct, there was no fraud ; and the jury must have so found, if that question had been precisely put to them, Was the taking of a prize a criminal act? This cannot be pretended; for the vessel captured was in the power and possession of the enemy, and his commission fully authorized him to make prize of her.
Tiiere being, then, no fraud, and no crime, there can be no barratry. (a)
It is said that he acted contrary to his duty to his owners; because his orders were to proceed immediately home from France. Without considering, at this time, whether the subsequent proceedings in France ought not to be considered as a qualification of those orders, given so long before, it is a sufficient answer to say, that this may be, and yet no barratry. In the case of Phyn vs. The Royal Exchange Insurance Company, the orders were to proceed with all possible expedition ; yet there was a delay and a deviation, which was held not to have been barratry. Whether the master acted contrary to his duty to his owners, under all the circumstances of the case before us, may be a question; but it is not necessary now to decide it.
It has been urged by the counsel for the plaintiffs, with as much force as zeal and eloquence, without authority, can give, that the former decision in this case, by which the underwriters were discharged, because the very act now complained of was a deviation, necessarily draws after it at this time a decision that the same act was barratry; because the shippers and owners lose their insurance by this act of the master.
But this is assuming that there can be no deviation without barratry, which is contradicted by all the authorities. The underwriters stand upon their legal * rights under this contract. They avoid liability, by showing that the voyage has not been performed according to the implied warranty in the policy. If they ask for hw, it must be dealt to them. But we are nut at liberty, because a misfortune has occurred, for. which no indemnity can be had in one form, to give it in another, against the principles of law. In order to help the assured, we cannot hold that to be barratry, to which the law -has not given that character. (b)

Judgment on the verdict.

 D. & E. 505.

 [ Todd vs. Richie, 1 Stark. 240. — Bottomly vs. Bovill, 5 B. & Cr. 210. — Ed.]

 [Grim vs. Phœnix Insurance Company, 13 Johns. Rep. 451 ; and see cases cited in note to Abbot on Shipping, by Mr. Justice Story, p. 138. — Taggart & Al. vs. Loring 16 Mass. Rep. 166. — Ed.]